## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTON PHILLIPS and JOSEPH GRAHAM,
Individually and on behalf of all others
similarly situated,

      *Plaintiffs,*

v.                                                                                          Case No. 23-2440-EFM-ADM

RIVERSIDE TRANSPORTATION, INC.,
and MISSOURI CAPITAL AND LEASING,
INC.,

      *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendants Riverside Transportation, Inc. ("Riverside")'s and Missouri Capital and Leasing, Inc. ("Missouri Capital")'s Partial Motion to Dismiss or Strike Plaintiff's First Amended Class and Collective Action Complaint (Doc. 25). Defendants ask this Court to dismiss or strike Plaintiffs Anton Phillips's and Joseph Graham's First Amended Class and Collective Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f). Specifically, Defendants move to dismiss or strike: (1) the class and collective action claims against both Defendants; (2) the claims against Missouri Capital for violating the Truth-in-Leasing ("TIL") regulations; and (3) the TIL claims against Riverside. Plaintiffs oppose the Motion. For the following reasons, the Court grants in part and denies in part Defendants' Motion.

## I.    Factual and Procedural Background[1]

Riverside is a corporation that provides commercial freight transportation services for customers using motor carrier vehicles. Missouri Capital is a corporation that leases commercial trucking equipment to lease drivers. Riverside and Missouri Capital are owned by the same individuals, subject to the same management, and share the same facilities.

Lease drivers provide commercial truck driving services for Riverside on an independent contracting basis. Riverside requires its lease drivers to execute an Independent Contractor Operating Agreement ("ICOA"), a standard form contract. Lease drivers are not given a genuine opportunity for negotiation, and they are presented with the ICOA on a take-it-or-leave-it basis.

The ICOA contains a class and collective action waiver clause ("the Waiver") that is written in all caps and bolded. The Waiver states:

> Contractor and contractor's workers waive any right to initiate, join (i.e., opt in to), remain in (i.e., not opt out of), or otherwise participate in any class action, collective action, consolidated action, or representative action brought against carrier, including but not limited to such actions brought under state or federal law and those arising under the Fair Labor Standards Act.

Also, the ICOA has a Duration and Termination of Agreement ("DTA") section that addresses the contractual obligations of the parties in the event of termination. The DTA states: "this Agreement begins on the Effective Date and ends on the Termination Date indicated just above the signature block."

---

[1] All facts were taken from Plaintiffs' Amended Complaint and accompanying written contracts unless otherwise noted.

Further, the ICOA allows Riverside to deduct or recover numerous charges from a lease driver's compensation. The deductions and charges are not subject to negotiation. Riverside regularly applies numerous deductions and charges to lease drivers' compensation.

Riverside refers individuals who seek to become lease drivers to Missouri Capital to obtain vehicles to use for commercial driving services. Individuals who lease vehicles from Missouri Capital are required to execute an Equipment Lease Agreement ("ELA"). The ELA requires lease drivers to fund "general reserves." The "general reserve" operates as an escrow fund. Further, the ELA does not contain a class and collective action waiver.

Riverside and Missouri Capital both collect from the escrow fund. TIL regulations require lease agreements to include certain terms with respect to management of escrow funds. These terms include motor carriers paying interest on the escrow fund and motor carriers providing an accounting of any transactions involving the escrow fund. Lease drivers were not given an accounting of the transactions related to the escrow funds. Riverside and Missouri Capital did not pay interest on the escrow funds, and they did not return the escrow funds to the lease drivers after their termination.

Anton Phillips performed commercial truck driving services as a lease driver for Riverside from December 2022 to June 2023. Phillips executed an ICOA for Riverside. Phillips also executed an ELA for Missouri Capital. Joseph Graham has performed commercial truck driving services as a lease driver for Riverside since November 2021. Graham also executed an ICOA for Riverside and an ELA for Missouri Capital.

On September 28, 2023, Plaintiffs commenced this action individually and on behalf of all other similarly situated individuals against Defendants. Plaintiffs filed their Amended Complaint on January 4, 2024. They assert Riverside violated the Fair Labor Standards Act's ("FLSA")

minimum wage provisions by failing to pay lease drivers at least $7.25 per hour for all hours worked. Additionally, they allege Defendants violated the TIL regulations by taking chargebacks and deductions from the lease drivers' compensation without providing the necessary disclosures, and by failing to properly manage the lease drivers' escrow funds.

On January 4, 2024, Plaintiffs filed their First Amended Complaint, seeking certification of their FLSA collective and Rule 23 class action. Plaintiffs seek to bring their FLSA claim as a FLSA collective action. In requesting certification, Plaintiffs propose the following FLSA collective definition: "all individuals who have performed commercial truck driving services for [Riverside] as 'lease drivers' subject to a written agreement, whom [Riverside] has classified as independent contractors." The referenced written agreement is the ICOA.

Additionally, Plaintiffs seek to bring their TIL claims as a class action pursuant to Rule 23. Plaintiffs propose the following Rule 23 class definition: "all individuals who have performed commercial truck driving services as 'lease drivers' for [Riverside] subject to a written lease agreement while leasing trucking equipment from Missouri Capital." The referenced written lease agreement is the ICOA.

Defendants filed their Motion for Partial Dismissal on February 9, 2024. On March 11, 2024, Plaintiffs filed their Memorandum in Opposition. Defendants filed their Reply on April 1, 2024. Defendants' Motion is now ripe for ruling.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiffs have failed to state a claim upon which relief can be granted.[2] Upon such motion, the

---

[2] Fed. R. Civ. P. 12(b)(6).

court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3] A claim is facially plausible if the plaintiffs plead facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the plaintiffs' allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

Generally, the Court must convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment if matters outside the pleadings are reviewed.[9] However, when documents are attached to or referenced in the complaint the Court may consider the documents if they are central to plaintiffs' claims and the parties do not dispute the documents' authenticity.[10] Thus, here, the Court

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] Fed. R. Civ. P. 12(d).

[10] *See GFF Corp. v. Assoc'd Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").

will consider the parties' attachments but analyze the parties' arguments in light of Rule 12(b)(6)'s requirements.

## III.    Analysis

### A.    Class and Collective Action Claims

Defendants ask this Court to dismiss Plaintiffs' class and collective action claims, arguing that they are barred by the ICOA's Waiver. Specifically, they argue that the Waiver is enforceable, and that Missouri Capital can enforce the ICOA's Waiver despite being a nonsignatory. The Court will first address whether the Waiver is enforceable, and if so, then whether Missouri Capital may invoke equitable estoppel.

### 1.    *Enforceability of Class Action and Collective Waivers*

In their Amended Complaint, Plaintiffs seek certification of a FLSA collective and Rule 23 class of individuals for their claims against Riverside under the FLSA and the TIL. Defendants argue that the Court should dismiss the class and collective action claims because the Waiver bars Plaintiffs from bringing a FLSA collective action and a Rule 23 class action suit. The Court will address the Waiver's enforceability under both the FLSA and Rule 23.

#### a.    FLSA Collective Action

Defendants assert that Plaintiffs waived their ability to bring a collective action under the FLSA. Whether a plaintiff may waive their right to participate in a FLSA collective action is unsettled law.[11] Notably, neither the Supreme Court nor the Tenth Circuit has ruled on this issue.[12]

---

[11] *Roig v. Alder Holdings, LLC*, 2024 WL 664717, at *2 (D. Utah Feb. 16, 2024).

[12] *Id*. at *2–3.

Several circuit courts have held that the right to participate in a collective action is waivable under the FLSA. For example, the Fifth Circuit rejected the claim that the right to participate in a collective action under the FLSA was a substantive right, and thus, found that it was waivable.[13] Additionally, the Fourth and Eleventh Circuits found that the text of the FLSA does not create a non-waivable right to a collective action.[14] The Second and Eighth Circuits also held that the FLSA collective action right was waivable.[15] Lastly, the Third Circuit held that there was no unconscionability in enforcing a contractual waiver of the FLSA collective action right.[16]

In contrast, the Sixth Circuit found a non-waivable right to collective actions under the FLSA.[17] In *Killion v. KeHE Distributors, LLC*,[18] the Sixth Circuit distinguished the other Circuits' decisions on the ground that "the respective waiver agreements in all of the [other Circuits'] cases included provisions subjecting the employees to arbitration."[19] The Sixth Circuit determined that without an arbitration agreement there was "no countervailing federal policy that outweighs the policy articulated in the FLSA."[20] Consequently, the Sixth Circuit found a non-waivable right to collective action when there was not an arbitration agreement present.[21]

---

[13] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004).

[14] *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) ("[The] text, legislative history, or purpose of the FLSA [does not suggest that] Congress intended to confer a nonwaivable right to a class action."); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1335 (11th Cir. 2014) ("[T]he text of FLSA § 16(b) does not set forth a non-waivable substantive right to a collective action.").

[15] *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296–97 & n.6 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013).

[16] *Vilches v. Travelers Cos., Inc.*, 413 F. App'x 487, 494 (3d Cir. 2011).

[17] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 591 (6th Cir. 2014).

[18] *Id.*

[19] *Id.*

[20] *Id.* at 592.

[21] *Id.*

However, the Fifth Circuit has since called into question the *Killion* decision. In *Convergys Corp. v. NLRB*,[22] the Fifth Circuit held that the right to a collective action was a waivable, procedural right, regardless of whether the waiver was combined with an arbitration clause.[23] Also, several district courts have disagreed with the *Killion* decision.[24] Further, the Supreme Court suggested that the FLSA's collective action right is waivable when it referenced the FLSA during discussions about the relationship between the Federal Arbitration Act ("FAA") and the National Labor Relations Act ("NLRA").[25]

Because more persuasive authorities hold that the FLSA right to a collective action is waivable, this Court declines to follow the Sixth Circuit's holding in *Killion*. Unlike in *Killion*, other Circuits looked to the FLSA's text, scheme, and legislative history to determine that the FLSA "does not set forth a non-waivable substantive right to a collective action."[26] Because this reasoning had nothing to do with the existence of an arbitration agreement, it persists regardless of whether a waiver is made in the context of arbitration.

---

[22] 866 F.3d 635 (5th Cir. 2017).

[23] *Id.* at 638–40.

[24] *Serrano v. Globe Energy Serv., LLC*, 2016 WL 7616716, at *5 (W.D. Tex. Mar. 3, 2016) ("[T]his Court declines to follow the holding in *Killion* . . . [b]ecause the FLSA contains no explicit provision that prohibits waiving an employee's procedural right to bring suit collectively, the Court determines that a collective action waiver is enforceable."); *Benedict v. Hewlett-Packard Co.*, 2016 WL 1213985, at *5 (N.D. Cal. Mar. 29, 2016) (declining to follow *Killion* because "other circuits have found waivers enforceable not because of the strong policy in favor of the FAA, but rather, as discussed above, because the FLSA's text, scheme, and legislative history reveal that the FLSA does not set forth a non-waivable substantive right to a collective action" (quotations omitted)); *Kubischta v. Schlumberger Tech. Corp.*, 2016 WL 3752917, at *7 (W.D. Pa. July, 14, 2016) (finding *Killion* unpersuasive because there is no evidence of legislative intent or policy reasons that weigh against enforcement of the waivers).

[25] *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524 (2018) (observing that "the FLSA expressly authorizes [class or collective action] yet allows parties to contract for bilateral arbitration instead."); *see also Roig*, 2024 WL 664717 at *3 ("[T]he [Supreme] Court's reference to the FLSA suggests that the Court views the FLSA's collective action right as a waivable right.").

[26] *Walthour*, 745 F.3d at 1335.

The FLSA is devoid of any provisions that explicitly preclude the waiver of a collective action.[27] Additionally, "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well."[28] Accordingly, the Court finds that the FLSA right to a collective action is a procedural right rather than a substantive right. Because the right is procedural in nature, the Court finds that plaintiffs may waive their right to participate in a FLSA collective action.

The Court now proceeds to analyze the enforceability of the FLSA collective action waiver under Kansas's contract interpretation laws. Under Kansas law, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent."[29] Kansas law "favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided."[30] When contract terms are clear, courts must determine the parties' intent from the contract's language alone instead of utilizing rules of construction or considering extrinsic evidence.[31] Whether the parties themselves believe there is any ambiguity is immaterial.[32] Thus, the plain language of a contract is enforced as it is written unless the text reasonably supports two

---

[27] *Id*. at 1334.

[28] *Owen*, 702 F.3d at 1052–53.

[29] *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 264 (2013) (quoting *Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 88, 896 (2011)).

[30] *Id*. at 265 (further citations and quotations omitted).

[31] *Id*.

[32] *See id*.

or more possible meanings.[33] "In general, parties may contract to any terms so long as they are neither illegal nor contrary to public policy."[34]

In this case, Plaintiffs attached Riverside's ICOA with their Amended Complaint. The Waiver is written in all caps and bolded within the ICOA. Specifically, the Waiver states:

> Contractor and contractor's workers waive any right to initiate, join (i.e., opt in to), remain in (i.e., not opt out of), or otherwise participate in any class action, collective action, consolidated action, or representative action brought against carrier, including but not limited to such actions brought under state or federal law and those arising under the Fair Labor Standards Act.

The plain language in the Waiver prevents Plaintiffs from engaging in any collective or class action against Riverside as a matter of contract. This language unambiguously restricts Plaintiffs' right to bring claims on a class wide basis. Thus, Plaintiffs waived their right to participate in a FLSA collective action when they executed the ICOA.

Plaintiffs assert several arguments that the Waiver is unenforceable, and thus, does not bar their FLSA collective action claims. First, Plaintiffs argue that the ICOA is an adhesion contract, and thus, it is unenforceable because it was not subject to negotiation. However, adhesion contracts are not per se unenforceable.[35] Rather, adhesion contracts are enforceable unless they are unconscionable.[36] Plaintiffs merely allege that the ICOA was an adhesion contract, that it was presented on a take-it-or-leave-it basis, and that there was not a genuine opportunity for negotiation. Because these factual allegations are merely conclusory, Plaintiffs fail to plausibly establish that the ICOA was unconscionable.

---

[33] *See id* at 264–65.

[34] *Id*. at 265 (citations omitted).

[35] *Bank of Am., N.A. v. Narula*, 46 Kan. App. 2d 142, 261 P.3d 898, 913 (2011).

[36] *Id*.; *see also Stormont-Vail Hosp. v. Spurling*, 2014 WL 4082469, at *5 (Kan. Ct. App. Aug. 15, 2014) (utilizing ten factors to determine whether a contract is unconscionable).

Next, Plaintiffs contend that the Waiver is unenforceable because Defendants have not authenticated the electronic signature on the ICOA under the Kansas Uniform Electronic Transaction Act ("KUETA"). However, Plaintiffs fail to allege any facts that the electronic signature on the ICOA was not authenticated. Plaintiffs attached to their Amended Complaint a copy of an ICOA that was executed by Phillips. They also alleged that Riverside requires its lease drivers to execute ICOA's. Accepting Plaintiffs' allegations as true, the ICOA was a properly executed contract.

Plaintiffs also argue that because Defendants fail to produce an ICOA signed by Graham there is no evidence that Graham's signature is valid or that Graham's ICOA contains the Waiver. This argument is not supported by Plaintiffs' factual allegations. As noted above, the Amended Complaint is devoid of any factual allegations disputing the authenticity of the electronic signatures. Plaintiffs allege the ICOA is a standard form contract that is executed by each of Riverside's lease drivers. They attached to the Amended Complaint a copy of the ICOA which contains the Waiver. Plaintiffs also allege that Graham worked as a lease driver for Riverside. Therefore, Plaintiffs plausibly alleged that the ICOA's were the same for each lease driver and each lease driver executed an ICOA. Accordingly, Graham's signature was valid and his ICOA contained the Waiver.

Additionally, Plaintiffs contend that the Waiver is unenforceable because it expired with the lease drivers' termination. They argue that the Waiver is ambiguous because it does not contain precise language that it remains in effect after termination of the ICOA. For support, Plaintiffs point to the DTA section of the ICOA that states: "this Agreement begins on the Effective Date and ends on the Termination Date indicated just above the signature block." However, the DTA addresses the contractual obligations of the parties in the event of termination—not methods of

dispute resolution. Also, dispute resolution provisions survive the termination of the contract.[37] Consequently, the Waiver did not terminate with the lease drivers' termination.

Plaintiffs further argue that the Waiver is unenforceable because collective action waivers outside the context of arbitration are a novelty and there is no federal law mandating enforcement of the FLSA collective action waiver. The Court already addressed above that a plaintiff may waive their right to participate in a FLSA collective action. Thus, the Waiver is not unenforceable because it is outside the context of arbitration and there is not a federal law mandating enforcement. Consequently, Plaintiffs fail to plausibly allege facts that the Waiver is ambiguous or unenforceable. As a result, the Court finds that Plaintiffs waived their right to participate in a FLSA collective action when they executed the ICOA. Therefore, the Court dismisses the FLSA collective action claims against Riverside.

   b.   Rule 23

Defendants argue that the Court should dismiss the Rule 23 class action claims because the Waiver bars Plaintiffs from bringing a Rule 23 class action suit. Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[38] The Supreme Court has clearly held that "congressional approval of Rule 23" does not "establish an entitlement to class proceedings for the vindication of statutory rights."[39] The ability to pursue

---

[37] *See Wyldewood Cellars, Inc. v. Torro*, 2023 WL 3750582, at *4 (D. Kan. June 1, 2023); *see also CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 807 (N.D. Ohio 2021) ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses." (citation and quotation omitted)).

[38] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

[39] *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

-12-

litigation through a class action suit under Rule 23 is a procedural right not a substantive one.[40] Thus, a person contractually waiving the ability to pursue litigation as a class "no more eliminates [a person's] right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief."[41]

Courts analyze the enforceability of Rule 23 class action waivers under the applicable state laws of contract interpretation.[42] Thus, the Court determines the enforceability of the Rule 23 class action waiver under the Kansas laws of contract interpretation as previously explained. The specific language of the Waiver within the ICOA is also noted above. Further, Plaintiffs assert the same arguments against the enforceability of the Rule 23 waiver as they made regarding the FLSA collective action waiver. As discussed above, the Court denies these arguments. Consequently, the Court finds that Plaintiffs waived their right to participate in a Rule 23 class action when they executed the ICOA. Therefore, the Court dismisses the Rule 23 class action claims against Riverside.

Additionally, Plaintiffs requested that the question of whether a party can contractually waive their Rule 23 class action rights be certified to the Kansas Supreme Court. The decision to certify is "within the 'sound discretion of the federal court.'"[43] In its discretion, the Court declines to certify the question to the Kansas Supreme Court.

---

[40] *See id*. ("[S]uch an entitlement . . . would be an abridgment or modification of a substantive right forbidden to the Rules. But there is no evidence of such an entitlement in any event. The Rule imposes stringent requirements for certification that in practice exclude most claims." (quotations, citations, and brackets omitted)); *see also Gutman v. PointsBet USA Inc.*, 2024 WL 2106517, at *10–12 (D. Colo. Apr. 18, 2024) (determining that Rule 23 class actions can be contractually waived).

[41] *Am. Express Co.*, 570 U.S. at 326.

[42] *Gutman*, 2024 WL 2106517, at *12–16 (D. Colo. Apr. 18, 2024) (analyzing the applicability of a Rule 23 class action waiver under the contract interpretation laws of Colorado, New York, Illinois, Iowa, and Virginia).

[43] *Bruce v. Kelly*, 2021 WL 4284534, at *22 (D. Kan. Sept. 21, 2021) (quoting *Hartford Ins. Co. v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005)) (further citation and quotations omitted).

2. *Equitable Estoppel*

Plaintiffs seek certification of a Rule 23 class of individuals for their claims against Missouri Capital under the TIL regulations. Defendants argue that equitable estoppel bars Plaintiff's Rule 23 class action claims against Missouri Capital. In Kansas, application of the equitable estoppel doctrine rests within the sound discretion of the trial court.[44] While Kansas courts have not applied the equitable estoppel theory to enforce class or collective action waivers, federal courts have invoked it to allow nonsignatory defendants to enforce contractual class and collective action waivers.[45] Those federal courts applied equitable estoppel to allow nonsignatories to enforce class and collective action waivers because the state courts invoked equitable estoppel to enforce arbitration agreements.[46] Kansas courts have invoked equitable estoppel to allow nonsignatory defendants to enforce arbitration agreements.[47] Thus, the Court will apply Kansas's equitable estoppel doctrine that it uses to enforce arbitration agreements to determine whether Missouri Capital can enforce the Waiver.

Under Kansas' equitable estoppel theory, a nonsignatory may enforce the contractual provision if the disputes between signatories are closely connected to the disputes with the nonsignatory.[48] A nonsignatory may enforce a contractual provision if the claims are substantially

---

[44] *Bankers Tr. Co. v. United States*, 29 Kan. App. 2d 215, 25 P.3d 877, 880 (2001) (citation omitted).

[45] *See Naranjo v. Nick's Mgmt., Inc.*, 652 F. Supp. 3d 737, 753 (N.D. Tex. 2023) ("[T]he logic underlying equitable estoppel applies with no less force in the context of collective action waivers."); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013) (applying equitable estoppel to enforce a class action waiver); *Ordosgotti v. Werner Enters., Inc.*, 2022 WL 874600, at *8–10 (D. Neb. Mar. 24, 2022) (enforcing a class action waiver under the theory of equitable estoppel).

[46] *Naranjo*, 652 F. Supp. 3d at 752–53; *Ordosgotti*, 2022 WL 874600, at *7–8.

[47] *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 206 P.3d 1, 9 (2009).

[48] *Id.*

connected.[49] "[I]t boils down to how close a connection exists between the claims explicitly subject to [the Waiver] and those involving the party that didn't sign the [ICOA]."[50]

Here, Plaintiffs argue that equitable estoppel cannot be invoked to allow Missouri Capital to enforce the Waiver because Plaintiffs' TIL claims do not depend on the ICOA. However, Plaintiffs' proposed class definition for the TIL claims against Riverside and Missouri Capital includes "all individuals who have performed commercial truck driving services as 'lease drivers' for [Riverside] subject to a written lease agreement while leasing trucking equipment from Missouri Capital." The written lease agreement referred to is the ICOA. An individual would be unable to obtain class membership without the ICOA. Therefore, the TIL claims do rely upon the ICOA.

Additionally, Plaintiffs allege identical TIL claims against Riverside and Missouri Capital. The factual allegations that Plaintiffs rely on to support the TIL claims against Riverside and Missouri Capital are the same. Further, Plaintiffs allege that Riverside and Missouri Capital operated as an integrated enterprise and are operationally entangled. Thus, the TIL claims against Riverside and Missouri Capital are inseparable under Plaintiffs' Amended Complaint. Accepting Plaintiffs' factual allegations as true, the TIL claims against Missouri Capital are substantially connected to the TIL claims against Riverside, and thus, equitable estoppel can be invoked.

Plaintiffs' Amended Complaint alleged that Riverside and Missouri Capital operated collectively. Their identical TIL claims against Riverside and Missouri Capital are based on the same facts. Moreover, the proposed class definition relies upon the ICOA which includes the

---

[49] *Id*. at 9–10.

[50] *Id*. at 9.

Waiver. Accordingly, the Court finds that Missouri Capital can enforce the Waiver. As a result, the Rule 23 class action claims against Missouri Capital are dismissed. Because the Waiver is enforceable by Riverside and Missouri Capital, the Court finds that all of the class and collective action claims are dismissed.

**B.     Federal TIL Regulation Claims**

Plaintiffs bring TIL claims against Defendants under 49 C.F.R. § 376.11 and § 376.12. They allege Defendants violated the TIL regulations by: (1) taking chargebacks and deductions from Plaintiffs' compensation without providing the necessary disclosures in the ICOA; (2) failing to properly manage Plaintiffs' escrow funds, including paying interest on those funds; and (3) failing to return those funds to lease drivers within 45 days of their termination. Defendants argue that the TIL claims against Missouri Capital should be dismissed because it is not a motor carrier, and the TIL claims against Riverside should be dismissed because Plaintiffs fail to allege actual damages. The Court will address the arguments to dismiss the claims against each Defendant in turn.

*1.     Missouri Capital*

Defendants ask the Court to dismiss Plaintiffs' TIL claims against Missouri Capital because it is not a motor carrier. Truckers can bring a private cause of action against motor carriers for damages resulting from a violation of the TIL regulations.[51] "The truth-in-leasing regulations protect independent truckers from motor carriers' abusive leasing practices."[52] However, "an affiliated entity may be required to comply with the regulations even though the entity is not a

---

[51] 49 U.S.C. § 14704(a); *Fox v. TransAm Leasing Inc.*, 839 F.3d 1209, 1211 n.1 (10th Cir. 2016).

[52] *Id.* at 1211.

motor carrier under federal law."[53] The purpose of requiring an affiliate to comply with the regulations is to "prevent registered carriers from taking advantage of a potential loophole [where] a registered carrier could create a non-registered business entity and thereby avoid the regulations."[54] A noncarrier affiliate can be held liable when the terms of the agreement with the noncarrier are incorporated into the agreement with the motor carrier.[55] Mere allegations of collusion from "the intertwined nature of the ownership, officers, and employees" between two organizations are not sufficient to show the exploitation of the loophole.[56]

Here, Plaintiffs fail to make any allegations regarding Riverside exploiting the potential loophole in the regulations. However, Plaintiffs argue that they sufficiently alleged that Missouri Capital is a liable affiliate because Riverside and Missouri Capital operated as an integrated enterprise and are operationally entangled. These allegations are not sufficient to show the exploitation of the loophole, and thus, cannot trigger affiliate liability by themselves.

Plaintiffs also rely on their allegations that Missouri Capital requires lease drivers to fund "general reserves" that allegedly qualify as an escrow fund. This "general reserve" is disclosed only by Missouri Capital's ELA. While Plaintiffs allege that Riverside and Missouri Capital both collect from the "general reserve," the Amended Complaint is devoid of any allegations that the ELA is incorporated into the ICOA. Plaintiffs allege that the ICOA constitutes a lease under the TIL regulations, but they make no such allegations regarding the ELA. Further, the ELA and the ICOA are attached to the Amended Complaint. The language of the ICOA does not refer to the

---

[53] *Roberts v. TransAm Trucking, Inc.*, 2023 WL 6376756, at *14 (D. Kan. Sept. 29, 2023).

[54] *Owner-Operator Indep. Drivers Ass'n v. Artic Exp.*, 87 F. Supp. 2d 820, 828–29 (S.D. Ohio 2000).

[55] *Roberts*, 2023 WL 6376756, at *14.

[56] *Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 2006 WL 1877081, at *5 (E.D. Mo. July 6, 2006).

ELA or Missouri Capital. Likewise, the language of the ELA does not refer to the ICOA or Riverside. Therefore, the ELA is not incorporated into the ICOA. Consequently, Missouri Capital cannot be held liable under the theory of affiliate liability. Because Missouri Capital is not liable under the theory of affiliate liability, the Court dismisses the TIL claims against it.

     2.    *Riverside*

Defendants ask the Court to dismiss Plaintiffs' TIL claims against Riverside because Plaintiffs fail to allege actual damages. Under TIL claims for damages, it is the truckers' burden to prove actual damages—i.e., that they suffered monetary harm from the carrier's actions.[57] Allegations that the defendant underpaid the plaintiff, that the plaintiff was under paid by defendant's pay structure and wage deduction practices, that defendant's lack of transparency in the contractual relationship disadvantaged plaintiff, and that defendant failed to provide documentation to confirm the underpayments are sufficient to plausibly plead actual damages.[58]

Here, Plaintiffs allege that Riverside underpaid them through a scheme of wage deductions. They also allege Riverside failed to provide them with required disclosures under the TIL. Plaintiffs further allege that they loss interest payments on escrow funds, they were never given an accounting of the transactions relating to the escrow funds, and the escrow fund was not returned to them after termination. Accepting these allegations as true, Plaintiffs sufficiently alleged they were underpaid and are missing funds. Therefore, the Court finds that Plaintiffs

---

[57] *See Fox*, 839 F.3d at 1218.

[58] *See Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 912–13 (W.D. Ky. 2018) (finding allegations of underpayment due to wage deduction practices and policies and the lack of contractual transparency causing disadvantages was enough to adequately plead actual damages); *Mervyn v. Nelson Westerberg, Inc.*, 2012 WL 6568338, at *3 (N.D. Ill. Dec. 17, 2012) (holding allegations that defendants underpaid plaintiff and failed to provide plaintiff with documentation confirming the underpayment was sufficient to plead damages).

plausibly plead actual damages for their TIL claims. As a result, the Court denies Defendants' Motion as to the TIL claims against Riverside.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or Strike Plaintiff's First Amended Class and Collective Action Complaint (Doc. 25) is **GRANTED** in part and **DENIED** in part. Plaintiffs' collective and class action claims under the FLSA and TIL, and the individual TIL claims against Missouri Capital are **DISMISSED.** Defendants' motion to dismiss the TIL claims against Riverside is **DENIED.**   Missouri Capital is terminated from the case.

**IT IS SO ORDERED.**

Dated this 12th day of July, 2024.

ERIC F. MELGREN
CHIEF UNITD STATES DISTRICT JUDGE